629 A.2d 626

**Michael O. MAGAN**

v.

**MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND et al.**

**No. 139, Sept. Term, 1991.**

Court of Appeals of Maryland.

Aug. 23, 1993.

536

Weston Alan Park (Prem & Dumler, on brief), Baltimore, for petitioner.

Meg L. Rosthal, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, Bryan D. Bolton (argued), (David M. Funk, Nathan Braverman, Shapiro and Olander of Baltimore, Stephen P. Carney, Hunt Valley, on brief), for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of MD (retired, Specially Assigned), JJ.

McAULIFFE, Judge.

Section 55A of the Insurance Code of this State[1] authorizes the Insurance Commissioner to impose certain sanctions upon an insurer whose certificate of authority is subject to revocation or suspension because of a violation of that Code. In lieu of or in addition to revocation or suspension, the Commissioner may impose a penalty of up to $50,000, and may

> require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation.

This case turns on the intent of the legislature in its use of the word "restitution." Specifically, we must determine whether the legislature used that term in its historical sense of a remedy for unjust enrichment, or intended a broader meaning that would enable the Commissioner to award damages for all financial injuries shown to have been caused by the violation. We hold, as did the Insurance Commissioner and the circuit court below, that the legislature intended the former meaning.

## I.

This case has a rather difficult history. Michael O. Magan is a licensed physician in this State, specializing in obstetrics and gynecology. He purchased medical malpractice insurance from Medical Mutual Liability Insurance Society of Maryland (Medical Mutual) until August, 1984, when he became insured by Pacific Employers Insurance Company. Pacific insured Dr. Magan only until July, 1985, when it ceased writing malpractice insurance in Maryland. Dr. Magan applied for coverage with Medical Mutual, but was only partially successful. Medical Mutual provided coverage for the doctor's surgical and gynecological practice, but refused to provide obstetrics coverage, citing three claims against Dr. Magan based on occurrences in 1979 and 1980. Dr. Magan complained to the

---

1. The Insurance Code is codified at Article 48A of the Maryland Code. Unless otherwise indicated, references to sections will be to Article 48A, Maryland Code (1957, 1986 Repl.Vol.).

Insurance Commissioner, alleging that Medical Mutual had engaged in an unfair trade practice by its discriminatory refusal to underwrite the requested coverage, in violation of § 234A.[2]

A chief investigator for the Insurance Division made a preliminary finding that Medical Mutual had not violated § 234A by refusing to extend obstetrical coverage to Dr. Magan. The doctor demanded a hearing before the Insurance Commissioner, and when his demand was not met, filed an appeal to the Circuit Court for Baltimore City. That court heard testimony and concluded that Medical Mutual had not acted pursuant to appropriate standards, and directed that it provide the requested coverage. Medical Mutual complied with the court order by providing obstetrical coverage to Dr. Magan effective 2 June 1986, but the Insurance Commissioner and Medical Mutual appealed the decision to the Court of Special Appeals. That Court affirmed the judgment of the circuit court. *Medical Mutual Liability Ins. v. Magan*, 72 Md.App. 330, 529 A.2d 841 (1987). We granted certiorari and vacated the judgment of the Court of Special Appeals, holding that the issue on appeal should have been limited to Dr. Magan's right to a hearing before the Insurance Commissioner, a right we found to exist. *Muhl v. Magan*, 313 Md. 462, 545 A.2d 1321 (1988).[3] The case was remanded to the Insurance Commissioner for hearing, and Medical Mutual voluntarily continued to provide full coverage to Dr. Magan.

---

**2.** Section 234A(a) prohibits an insurer from refusing to underwrite a particular insurance risk for any unfairly discriminatory reason. It further provides that no insurer may refuse to underwrite a particular risk except by application of standards reasonably related to the insurer's economic and business purposes.

**3.** While the appeal was still pending in this Court, Dr. Magan filed a common law tort action against Medical Mutual in the Circuit Court for Baltimore City. That action was dismissed for failure to exhaust the administrative remedy, and Dr. Magan appealed. The Court of Special Appeals affirmed, holding that there was no common law cause of action for denial of requested insurance, and the exclusive remedy for violation of the statutory requirement of nondiscrimination was that provided by § 55A. *Magan v. Medical Mutual,* 81 Md.App. 301, 567 A.2d 503 (1989).

When again before the Insurance Commissioner, Dr. Magan requested a determination that Medical Mutual had violated § 234A, and he requested restitution in accordance with § 55A(2). He claimed damages of $527,458 for the 10 months he was denied obstetrical insurance coverage, consisting of $377,180 lost income and $150,278 attorneys' fees. Medical Mutual "[i]n order to narrow the issue at hearing and more promptly resolve this lengthy dispute," stipulated that its original underwriting decision "was inconsistent with Article 48A, § 234A." Brief for appellee, Medical Mutual, at 3. Accordingly, the sole issue before the Commissioner was Dr. Magan's claim for restitution pursuant to § 55A(2) for Medical Mutual's refusal to provide malpractice insurance for his obstetrical practice from 1 August 1985 to 2 June 1986.

After a full hearing, the Commissioner determined that Dr. Magan was not entitled to restitution under § 55A despite Medical Mutual's admitted violation of § 234A, because there had been no unjust enrichment to Medical Mutual. The Commissioner further held that Dr. Magan was not entitled to attorneys' fees because the legislature had not provided that remedy for a violation of § 234A. The Circuit Court for Baltimore City affirmed the Commissioner, and Dr. Magan appealed to the Court of Special Appeals. We granted the Insurance Commissioner's petition for certiorari before the case was considered by the intermediate appellate court.

## II.

Subsection (2) was added to § 55A by chapter 755 of the 1971 Laws of Maryland, enacting Senate Bill 143. It is apparent from the language of the subsection as well as the title of the bill that the legislature was focusing on the concept of restitution. The new subsection authorized the Insurance Commissioner to "require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation." That portion of the title of the bill dealing with this change stated as its purpose:

to add restitution to the remedies which the Commissioner may require; and to make the imposition of a penalty and the requirement for restitution additional as well as alternative to revocation or suspension.

Restitution is probably most often thought of as a remedy to avoid unjust enrichment. Section 1 of the *Restatement of Restitution* (1937) provides that:

A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

In the introductory note to part I of the *Restatement,* after tracking the development of the law of quasi-contracts, the early use of equitable remedies, and the later reliance upon *indebitatus assumpsit* and the common counts, the authors state, at page 8:

The action of general assumpsit was permitted in an increasing number of cases where a person had received "money or money's worth" from or on account of another, and finally the generalization was made that the action would lie in all the cases where one had received or used something for which it was just that he should compensate another, the remedy being a money payment for the value of the thing given or the benefit received (see § 1).

F.B. Ames, in his article, *The History of Assumpsit,* 2 Harv.L.R. 53 (1888), stated at 66:

The equitable principle which lies at the foundation of the great bulk of quasi-contracts, namely, that one person shall not unjustly enrich himself at the expense of another, has established itself very gradually in the Common Law.

More recently, Professor George Palmer wrote:

Unjust enrichment is an indefinable idea in the same way that justice is indefinable. But many of the meanings of justice are derived from a sense of injustice, and this is true of restitution since attention is centered on the prevention of injustice. Not all injustice but rather one special variety: the unjust enrichment of one person at the expense of another. This wide and imprecise idea has played a crea-

tive role in the development of an important branch of modern law.

Palmer, *The Law of Restitution,* § 1.1, at 5 (1978) (footnote omitted). Professor Graham Douthwaite introduces his book, *Attorneys Guide to Restitution,* (1977), with the Latin expression: *Nemo debet locupletari ex aliena jactura* (No one should be unjustly enriched at the expense of another). Professor Corbin contrasts the remedy of restitution with that of damages:

> The remedy of restitution differs from the remedy in damages in that in awarding damages the purpose is to put the injured party in as good a position as he would have occupied, had the contract been fully performed, while in enforcing restitution, the purpose is to require the wrongdoer to restore what he has received and thus tend to put the injured party in as good a position as that occupied by him before the contract was made. Ordinarily, restitution requires that the defendant shall give something back to the plaintiff; and it may be supposed that the defendant cannot do this unless he has received something of value at the plaintiff's hands.

5 *Corbin on Contracts,* § 1107, at 573 (1964) (footnote omitted). To the same effect, see Dan B. Dobbs, *Handbook on the Law of Remedies,* § 4.1, at 224 (1973):

> The restitution claim stands in flat contrast to the damages action in this respect. The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. (Footnote omitted.)

In *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the question presented to the Court was whether a defendant in a federal district court was entitled to a jury trial when the plaintiff claimed actual and punitive damages, pursuant to statute, for an alleged violation of § 812 of the Civil Rights Act of 1968. Arguing that the defendant had no such

right, the plaintiff pointed out that federal courts of appeals had routinely denied jury trials while awarding back pay for violation of Title VII of the Civil Rights Act of 1964. The Supreme Court distinguished a traditional claim for damages from one that was restitutory in character, commenting that "[i]n Title VII cases the courts of appeals have characterized backpay as an integral part of an equitable remedy, a form of restitution." *Id.* at 197, 94 S.Ct. at 1010. The Court went on to say:

> Nor is there any sense in which the award here can be viewed as requiring the defendant to disgorge funds wrongfully withheld from the plaintiff. Whatever may be the merit of the "equitable" characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief.

*Id.* (footnote omitted).

In *Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237 (1966), we said that appellant "does possess a colorable cause of action grounded on a theory of unjust enrichment or restitution" because "the law implies a debt 'whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.'" *Id.* at 363–64, 219 A.2d 237, quoting in part from *State, use, Emp. Sec. Bd. v. Rucker,* 211 Md. 153, 158, 126 A.2d 846 (1956). *See also Schlosser v. INA,* 325 Md. 301, 309–10, 600 A.2d 836 (1992) (discussing the availability of restitution to prevent unjust enrichment or unjust detriment where an insured has incurred expenses to prevent loss that the insurer would have been required to indemnify).

As Dr. Magan points out, however, association of the word "restitution" with the remedy for unjust enrichment is not exclusive. A strong root of the word "restitution" is restoration, and when applied to the injured party rather than to the party gaining a benefit may mean restoring the injured party to the position enjoyed prior to loss or injury. The Municipal Court of Appeals for the District of Columbia accepted a broader interpretation of the term in deciding that a trial

judge properly imposed as a condition of probation in a criminal case a requirement that the defendant pay restitution of a specified amount representing the victim's loss as a result of the defendant's violation. The court said:

> Appellant argues that the condition of payment of the award was not an order of restitution, that restitution is limited to returning specific property, or its value, which has been taken from another, and that appellant had taken nothing from the employee. Restitution, however, in its broad sense is not confined to the return of something of which one has been deprived, but is synonymous with reparation and includes compensation for loss, damage, or injury done to another.

*Basile v. United States,* 38 A.2d 620, 622 (D.C.Mun.App.1944). The Supreme Court of California has also taken a rather broad view of restitutive damages.

> Restitutive damages, in short, are akin to special damages, i.e., they are quantifiable amounts of money due an injured private party from another party to compensate for the pecuniary loss directly resulting from the second party's violation of law.

*Walnut Creek Manor v. FEHC,* 54 Cal.3d 245, 284 Cal.Rptr. 718, 728, 814 P.2d 704, 714 (1991).

Our legislature has used restitution in its broader sense of reparation for harm or injury, but in such cases has been quite specific in detailing and limiting the losses that may be ordered compensated as "restitution." *See, e.g.,* Article 27, § 640, Maryland Code (1957, 1992 Repl.Vol.), authorizing order of restitution of certain losses as part of sentence and as condition of probation; Article 27, § 637, authorizing execution against convict's property where order for restitution or reparation has been entered; § 3–829(a) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol., 1992 Cum.Supp.), authorizing entry of judgment of restitution against child and parent of child for certain actual, general damages caused by delinquent act of child. The Court of Special Appeals has pointed out in discussing the scope of

§ 3–829(c) of the Courts Article, the legislature did not contemplate a sanction equivalent to a full tort recovery, and in that subsection at least, did not contemplate an award of special, as opposed to general, damages. *In re Zephrin D.,* 69 Md.App. 755, 761–64, 519 A.2d 806 (1987). For a discussion of the distinction between general and special damages, see *Restatement (Second) of Torts* § 904 (1979); McCormick, *Handbook of the Law of Damages,* § 8 (1935); 1 *Damages in Tort Actions,* § 1.01 (1993).

We conclude that the legislature intended the more limited meaning of restitution in § 55A(2), not only because that is the more traditional use of the term, or as Dr. Magan concedes, its "common law meaning," but also because of the existence of several extrinsic factors which suggest that result.

First, we observe that the interpretation of the statute we believe to be correct does provide significant opportunity for relief from direct financial damages that may occur as a result of an improper denial of coverage. Medical Mutual concedes, and the Insurance Commissioner agrees, that if an obstetrical malpractice claim had been filed against Dr. Magan which fell within the coverage the insurer wrongfully refused to provide, the restitutory powers granted by § 55A(2) would authorize the Commissioner to order payment by Medical Mutual of the amount of judgment or reasonable settlement, plus reasonable attorneys' fees for investigation and defense of the claim, less costs of premium. In other words, the Commissioner would possess the power to restore the parties to the position they would have been in if the policy had been written in accordance with law. In so doing, the Commissioner would rectify the unjust enrichment of the insurer by requiring it to surrender the funds it retains but should have paid if the policy had been written. *See Restatement of Restitution* § 1, comment d. This type of restitutory relief from a direct financial loss is consistent with relief provided by the legislature in other instances involving insurance. *See, e.g.,* Article 48A, § 240D, providing that an insurer will be liable for coverage if it fails to comply with certain sections of the Insurance Code.

Additionally, we note that the determination of damage claims for tortious wrongs has historically been a function of the judiciary. Although the trend in recent years has been to look with favor upon legislative delegation of powers to administrative bodies, the delegation has usually been of legislative rather than judicial functions, and approval by the courts has normally rested upon a finding of the presence of sufficient legislative guidelines to limit adequately the exercise of discretion by administrative officials. *Maryland State Police v. Warwick,* 330 Md. 474, 480–81, 624 A.2d 1238 (1993); *Department of Transportation v. Armacost,* 311 Md. 64, 77, 532 A.2d 1056 (1987); *County Council v. Investors Funding,* 270 Md. 403, 442, 312 A.2d 225 (1973). Given the choice of finding that the legislature intended to grant limited restitutory powers consistent with relief it has granted in similar cases of improper refusal or termination of coverage, or that it intended to give the Insurance Commissioner virtually unlimited power to award general and special compensatory damages,[4] we are strongly inclined to believe that the legislature intended the former.

 Additionally, where the words of a statute leave room for interpretation as to its meaning, we will ordinarily give some weight to the construction given the statute by the agency responsible for administering it. *Muhl v. Magan, supra,* 313 Md. at 482, 545 A.2d 1321; *Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 233, 449 A.2d 385 (1982). The degree of weight to be given an administrative interpretation varies according to a number of factors, including whether the interpretation has resulted in a contested adversary proceeding or rule-making process, whether the interpretation has been publicly established, and the consistency and length of the administrative interpretation or practice. *Comptroller v. John C. Louis Co.,* 285 Md. 527, 544–45, 404 A.2d 1045

---

**4.** We have been reluctant to find an implied grant of a private cause of action, even when the further complication of delegation of authority to an administrative agency was not involved. *See Erie Ins. Co. v. Chops,* 322 Md. 79, 86–92, 585 A.2d 232 (1991).

(1979). The Commissioner's interpretation in this case is consistent with that urged by Medical Mutual. Although there is no indication in this record that this is a long-standing interpretation, it is clear that this interpretation represents the carefully considered opinion of the Commissioner resulting from a contested adversary proceeding. Accordingly, we have given the Commissioner's interpretation some weight.

Finally, we believe the legislative histories of Senate Bill 143, which added subsection (2) to § 55A, and Senate Bill 138, introduced at the same 1971 session, are significant. SB 138 proposed an amendment to Article 48A, § 486G(b) that would grant the Insurance Commissioner authority with respect to premium finance companies similar to that which SB 143 proposed to grant with respect to insurers. The additional authority intended to be given by SB 138 would permit the Commissioner to

> require that restitution be made by any [premium finance company] violating this subtitle to any person who has suffered financial injury or damage as a result of such violation.

The language used in SB 138 was nearly identical to that of SB 143. That bill proposed to amend § 55A to authorize the Commissioner to

> require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation.

Both bills were introduced by the same sponsor, Senator Newton Steers, who had earlier served as Insurance Commissioner for this State. Both bills were referred to the Economic Affairs Committee, of which Senator Steers was a member. The committee recommended an amendment to SB 138, to define "restitution" as follows:

> Restitution is defined for the purposes of this section to mean that sum of money which, if paid to a person suffering pecuniary damage as a result of violation of this section, will restore that person to the same pecuniary position he would have been in, had the violation not occurred.

Although both bills were before the committee at the same time, no similar amendment was proposed to SB 143. SB 138 as amended and SB 143 in its original form were approved by the committee and sent to the floor for second reading on 22 February 1971. The amendment to SB 138 was adopted, and on 25 February both bills passed on third reading and were sent to the House. The bills travelled in tandem, and uneventfully, through the House, were passed and returned to the Senate on 3 April, and were thereafter signed by the Governor.

The broader meaning of "restitution" incorporated by amendment into SB 138 is the meaning Dr. Magan would have us adopt. He suggests that the definition included in SB 138 was not a legislatively expanded concept of restitution, but "simply confirmed what the Legislature meant in the first place by its repeated use of that term in matching sections of the Insurance Code." Brief for appellant at 28. We do not agree. If the legislature had wished to provide a definition of "restitution" that would apply throughout the Insurance Code, it would have added that definition to the general definitions set forth in §§ 2 through 8 of Article 48A. It did not do so. Instead, it specifically restricted application of the definition to § 486H(b). Moreover, where both bills were sponsored by the same senator, and were considered at the same time by a committee of which the sponsor was a member, it is difficult for us to accept the notion that the inclusion of this definition in one bill but not the other was anything other than intentional.

█ Accordingly, we hold that the Insurance Commissioner correctly determined that the damages claimed for alleged loss of profits are not restitutory damages within the meaning of § 55A(2).

### III.

█ Dr. Magan's claim for restitution also includes a claim for attorneys' fees. What we have said in part II is equally applicable to this claim—the expenditure of attorneys' fees by

Dr. Magan did not result in any unjust enrichment of Medical Mutual, and those damages are not embraced within the meaning of restitution as the term is used in § 55A(2). The legislature has, when it wished to do so, specifically authorized the Insurance Commissioner to order payment of reasonable attorneys' fees, see § 240AA(g), but it did not do so here.

In *Collier v. MD—Individual Practice,* 327 Md. 1, 13–17, 607 A.2d 537 (1992), we noted that the general rule barring recovery of counsel fees by a successful party has stood as a part of the jurisprudence of this country for nearly 200 years, and we discussed the limited exceptions to that rule which exist in Maryland. Those exceptions, growing out of actions by an insured required to enforce an existing contract of insurance, do not apply to an insurance carrier's refusal to enter into a contract of insurance, even where that refusal is in violation of a statute. The Insurance Commissioner did not err in disallowing the claim for attorneys' fees.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED, WITH COSTS.