771 A.2d 501

STATE of Maryland CENTRAL COLLECTION UNIT,

v.

Jerome L. KOSSOL.

No. 936, Sept. Term, 2000.

Court of Special Appeals of Maryland.

April 27, 2001.

Michael Scott Friedman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellant.

Brian S. Jablon (Saltzman & Jablon, LLC, on the brief), Ellicott City, for appellee.

Argued before JAMES R. EYLER, KRAUSER, and RAYMOND G. THIEME, Jr. (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

This appeal questions whether the Consumer Protection Division (CPD) of the Office of the Attorney General of Maryland may order an officer of corporate entities to pay restitution to Maryland consumers who were the victims of deceptive or misleading trade practices. We shall answer that question in the affirmative.

## Background

The State of Maryland Central Collection Unit (CCU), appellant,[1] filed suit seeking a money judgment based on an order issued by CPD in its quasi-judicial capacity. No petition for judicial review was filed, and the order became final. The order directed Jerome L. Kossol, appellee, to pay $6,000,000 in restitution, $265,000 in civil penalties, and $9,816 in costs as a result of appellee's participation in deceptive and misleading business practices in the sale of food plans and freezers to Maryland consumers. Appellant, in addition to the items in the CPD order, also sought a 17% collection fee. Appellant and appellee each filed a motion for summary judgment.

On December 27, 1999, a hearing was held on the competing motions, and on March 21, 2000, the Circuit Court for Baltimore City issued a memorandum opinion granting appellant's motion with respect to the civil penalties but denying it with respect to the other relief sought. The court reasoned that CPD's decision was entitled to preclusive effect with respect to appellee's liability, but he could not be required to pay restitution because the money generated by the deceptive practices was not paid directly to him. The court did not explain its denial of costs and collection fees.

On March 31, 2000, appellant filed a motion to amend the judgment, arguing that the restitution and costs awarded in CPD's unappealed order, and in addition, collection fees, were

---

1. Appellant is the statutory assignee of CPD charged with the collection of accounts or debts owed to the State or any of its units. *See* Md.Code (1995 Repl.Vol.), State Finance and Procurement Article, § 3–302(a).

proper and should be allowed. The circuit court, on June 1, 2000, reversed its prior holding with respect to costs and collection fees, but continued to deny appellant's claim for restitution. Appellant appealed, and appellee filed a cross-appeal.

The questions raised by appellant are:

1. Whether the circuit court erred as a matter of law in denying full preclusive effect to CPD's restitution order.

2. Whether the circuit court erred in holding that appellee could not be required to pay restitution.

The question raised by appellee is:

3. Whether the circuit court erred in holding that CPD could assess civil penalties against appellee.

### Facts

During the period from 1990 through mid–1996, Mt. Ephraim Meat Shop, Inc. and Wildwood and Cummings, Inc., trading as Continental Food Network (Continental), sold food plans and "free" freezers to consumers. Four separate plans were available, costing from $3,175 for a full plan to $1,347.50 for a half-menu reduced plan.

Consumers were assured that the food purchase would last for the period of the plan, and any shortages would be replenished without charge. Budgets were prepared by the sales representatives, including the food items to be provided, based upon the number of people in the home and current food bills. The customers were led to believe they would be saving money. Despite being told that the freezers were free and could be returned at the end of the plan, the customers were required to sign contracts to pay $1,450 over 36 months, plus interest, for the freezers.

Consumers who contracted with Continental learned almost immediately that the food they received would not last for the term of the contract; that the food they received was not the type they had been led to believe they would receive; that the quality of the food was not the top grade they had been

promised; that they were only approved for a lesser term than provided in the contracts they had signed; that nothing they received could be returned; that the freezers had a value between $500 and $800, not the $1,450 they were required to pay; and that any promises of additional food required additional cash payment. Consumers were required to resume their pre-contract food buying due to Continental's refusal to deliver what it had promised. The freezer contracts, furthermore, were being enforced irrespective of the continuation of the food plans.

The following facts are relevant to appellee's involvement in the practices found to be deceptive by CPD. Appellee (1) was Secretary of Mt. Ephraim Meat Shop, Inc. and a 17% shareholder in that company; (2) was Vice President of Wildwood and Cummings, Inc.; (3) participated in developing the sales procedures, forms, and sales manuals used in selling food plans; (4) was sales manager of Mt. Ephraim's Salisbury office and at times manager of its Delaware office; (5) participated in the design of the commission structure for sales representatives, handled most of the complaints received in the Salisbury office, and trained the sales people.

CPD initiated administrative proceedings against appellee, Mt. Ephraim Meat Shop, Inc., Cummings and Wildwood, Inc., and Mousa Ayoub, Vice President of Mt. Ephraim Meat Shop, Inc., based on the deceptive and misleading practices used in selling the food plans and freezers. In December, 1966, an administrative law judge (ALJ) conducted a hearing over a four-day period. The sole issue to be decided was whether the respondents violated certain provisions of the Consumer Protection Act, Md.Code (1990 Repl.Vol., 1996 Supp.), Commercial Law § 13–101 *et seq.*, and if so, whether an order granting relief or imposing sanctions would be appropriate under the Act.

The corporations were served and failed to appear. Appellee did not appear on the first day of the hearing, but he was present on the second, third, and part of the final day. He

was not represented by counsel. Mr. Ayoub was present without counsel on all four days.

The proceedings were governed by the contested case provisions of the Administrative Procedure Act, Md.Code (1995, 1996 Supp.), State Government Article, § 10–201 through 10–226. After hearing testimony from eight witnesses, receiving exhibits, and hearing argument, the ALJ issued a proposed decision and order recommending that respondents, including appellee, be held jointly and severally liable for restitution, civil penalties, and costs of the proceedings. The ALJ concluded that, based on appellee's extensive participation and intimate involvement in deceptive trade practices, he was individually liable and subject to penalties and restitution.

CPD adopted the decision and recommendations of the ALJ and issued a cease and desist order, setting forth the conditions under which respondents could continue to market their products. The restitution and civil penalties imposed by CPD's order were calculated as follows. Over the six-year period from 1990 to 1996, Continental made at least 40 sales per month and the sales produced $2,000,000 per year from Maryland consumers. Of the $12,000,000 Continental received during the six-year period, CPD concluded that the consumers were entitled to a 50% refund of the money paid. The 50% refund was based on a finding that the consumers received only 50% of the food they contracted to purchase and the freezers were not "free" but cost twice their actual value. Consequently, appellee and the other respondents were ordered to pay restitution in the amount of $6,000,000.

In addition, appellee was assessed a civil penalty for each violation of the Consumer Protection Act from October 9, 1995 through May 1, 1996. CPD concluded that 260 sales were made to Maryland consumers during that period. It imposed a penalty in the amount of $1,000 for each violation, for a total of $260,000. In addition, a $5,000 penalty was imposed for a direct sale made by appellee to a Maryland consumer. Pursuant to the CPD's order, appellee was jointly and severally liable for the $6,000,000 restitution, $260,000 in penalties, and

$9,816 in costs. Appellee was solely liable for the additional $5,000 penalty.

Neither appellee nor the other respondents sought judicial review of CPD's decision, although they were advised of their right to do so.

### Discussion

#### 1.

■ Appellant contends that CPD's decision is entitled to full preclusive effect. Relying on the general principles set forth in *Batson v. Shiflett,* 325 Md. 684, 701, 602 A.2d 1191 (1992), appellant points out that CPD was acting in a judicial capacity, the issues challenged on appeal were actually litigated before the agency, and the resolution of those issues was necessary to the decision.

■ We agree with the proposition that generally administrative decisions are entitled to full preclusive effect when the above conditions are present. *See Cogley v. Schnaper & Koren Constr. Co.,* 14 Md.App. 322, 326–27, 286 A.2d 819 (1972)(employer who fails to appeal orders issued by Workers' Compensation Commission may not collaterally attack the decision after it becomes final in an attempt to avoid the declarations made by the agency). Appellee does not argue to the contrary. Instead, appellee argues that if the administrative agency's decision turned on an error of law, it is not necessarily entitled to full preclusive effect. *See Klein v. Colonial Pipeline Co.,* 55 Md.App. 324, 338–41, 462 A.2d 546 (1983)(if an administrative decision is solely the product of an error of law, it is not entitled to *res judicata* effect); *Board of County Comm'rs v. Racine,* 24 Md.App. 435, 452, 332 A.2d 306 (1975)(same).

Appellee does not argue that CPD does not have the power to award restitution. Indeed, he could not do so. *See* Commercial Law § 13–403(b)(1)(if CPD determines a violation has been committed, it shall "issue an order requiring the violator to cease and desist from the violation and to take affirmative action, including the restitution of money or property."). In-

stead, appellee argues that the remedy of restitution provided for in the Consumer Protection Act is the common law form of restitution and that, because there was no evidence that appellee received a direct benefit from the consumers, he could not be ordered to pay restitution.

We are at the moment only concerned with whether the issue presented is a question of law in order to determine if CPD's decision is entitled to full preclusive effect, and thus, end the matter without any need to address other issues. It is difficult to discern whether the issue is one of misperception by the circuit court of the law of restitution, or whether it is one of insufficiency of the evidence to support the restitution award. Our understanding of appellee's argument is that we need not classify it in either category because the question of whether there is insufficient evidence, thus making CPD's decision arbitrary and capricious, is a question of law. We shall treat the first question presented as an alleged error of law, without deciding whether it is or is not an error of law within the meaning of *Racine* and *Klein,* and move to appellant's second question.

## 2.

Appellant contends that the circuit court erred in holding that restitution was not an available remedy with respect to appellee on the ground that there was insufficient proof that he had received or held monies paid by consumers. The circuit court relied primarily on *Magan v. Medical Mut. Liab. Ins. Soc'y,* 331 Md. 535, 629 A.2d 626 (1993), and *Luskin's, Inc. v. Consumer Protection Div.,* 353 Md. 335, 726 A.2d 702 (1999), for the proposition that restitution, as used in the Consumer Protection Act, has a common law meaning. The court held that, under the common law meaning, restitution could not be ordered against appellee in the absence of evidence that he had received a direct benefit.

In *Luskin's,* the Court of Appeals explained that, in contrast to tort damages which are recoverable to compensate an injured party for losses, restitution forces a defendant to disgorge benefits when it would be unjust for the defendant to

keep them. *See* 353 Md. at 383, 726 A.2d 702 (quoting *Consumer Protection Div. v. Consumer Pub. Co.*, 304 Md. 731, 501 A.2d 48 (1985)). Applying those principles, the *Luskin's* Court stated that CPD could order Luskin's to disgorge net profits that it received as a result of deceptive advertising. *Id.* at 385, 726 A.2d 702. In *Magan v. Medical Mut. Liab. Ins. Soc'y*, 331 Md. 535, 629 A.2d 626 (1993), the Court addressed the meaning of restitution in the Insurance Code and held that it was used in the common law sense to prevent unjust enrichment. Accordingly, the plaintiff could not recover his lost profits or attorney's fees. 331 Md. at 548–49, 629 A.2d 626. The Court of Appeals, in *Magan,* stated that the purpose of restitution

> is to require the wrongdoer to restore what he has received and thus tend to put the injured party in as good a position as that occupied by him before the contract was made. Ordinarily, restitution requires that the defendant shall give something back to the plaintiff; and it may be supposed that the defendant cannot do this unless he has received something of value at the plaintiff's hands.

331 Md. at 542, 629 A.2d 626 (quoting 5 *Corbin on Contracts,* § 1107, at 573 (1964)).

Appellant calls our attention to *Consumer Protection Div. v. Outdoor World Corp.*, 91 Md.App. 275, 293, 603 A.2d 1376 (1992). In that case, we stated that CPD had the power to order restitution of the amounts paid by State residents who visited out-of-State campgrounds in reliance on solicitations equal to the cost of the trip plus the fees charged to obtain prizes that they thought they would receive upon arrival.

The above cases are not squarely on point, however, in that while they support the proposition that restitution is to be accorded its common law meaning, they only provide us with the nature of the common law remedy of restitution, as distinguished from damages. They do not deal with the question of who can be required to pay restitution when there is a common scheme to defraud. In each of the above cases,

there was an action against a corporate entity where the issue was the nature of the remedy being sought.

We find the case of *State v. Cottman Transmissions Systems, Inc.,* 86 Md.App. 714, 587 A.2d 1190 (1991), useful. In that case, the Attorney General filed suit against Cottman Transmission Systems, Inc., alleging a violation of the Consumer Protection Act. We stated that the proper measure of restitution equaled the amount of money spent by consumers in reliance on the deceptive practice of selling unnecessary transmission inspections. *Id.* at 736, 587 A.2d 1190. We also stated, however, that Cottman, as franchisor, could be held accountable because it engaged in a deceptive practice, even though the fees were paid to franchisee service centers. *Id.*

We believe this result is consistent with the common law principles of restitution according to § 1 of the *Restatement of Restitution* (1936),

**A person who has been unjustly enriched at the expense of another is required to make restitution to the other.**

*Comment:*

    *a.* A person is enriched if he has received a benefit (see Comment *b*). A person is unjustly enriched if the retention of the benefit would be unjust[ ].

. . .

    *b. What constitutes a benefit.* A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. *The word "benefit," therefore, denotes any form of advantage.*

Final emphasis added. Furthermore, § 128 of the *Restatement of Restitution* provides:

**A person who has tortiously obtained, retained, used, or disposed of the chattels of another, is under a duty of restitution to the other.**

*Comment:*

*a.* "Tortiously" refers to such wrongful conduct as gives rise to a civil action either at law or in equity under the principles of the law of torts. . . .

*b. Chattel.* Any tangible, movable thing is a chattel. This term includes money. . . .

This section specifically includes chattels tortiously obtained by fraud. *Restatement of Restitution* § 128 cmt. d. *See also id.* §§ 150–59 introductory note (discussing the measure of recovery for actions for restitution and stating that "[i]f the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefitted [sic].").

In the instant case, with respect to appellee's liability, the ALJ stated:

Kossol [is] individually liable for each of the unfair or deceptive trade practices engaged in by Continental. Under Maryland law, it is unnecessary to "pierce the corporate veil" to hold officers of a corporation responsible for violations of the Consumer Protection Act. In *Hartford v. Scarlett Harbor,* 109 Md.App. 217, 265, 674 A.2d 106, 129–30 (1996), the Court of Special Appeals held that "a CPA [Consumer Protection Act] violation is in the nature of a tort action; it is a legal wrong that is not equivalent to a breach of contract." It is well established in Maryland that officers and agents of a corporation are personally liable for torts that they personally commit, or which they "inspire," "participate in," "contributed to," or "helped to bring about." *Tedrow v. Deskin,* 365 [265] Md. 546, 550–51, 290 A.2d 799, 802–03 (1972). In *Tedrow,* the Court of Appeals observed that the plaintiff had alleged that the corporate officers and agents had "express or implied knowledge" that the odometer had been rolled back in the car that the dealership sold to the plaintiff. *Id.,* at 551, 290 A.2d at 803.

The Court held that the trial court had erred in granting summary judgment for the owners of the dealership in light of the plaintiff's allegations. *Accord, Metromedia Co. v. WCBM Maryland, Inc.,* 327 Md. 514, 610 A.2d 791 (1992)(Officers of corporation liable for wrongdoing undertaken based upon their decisions).

The same standard applies to cases brought by the Federal Trade Commission against perpetrators of unfair or deceptive trade practices. Federal courts have similarly held that officers of corporations are liable if they "participated directly in" the unfair or deceptive trade practices or have had the authority to control them. *FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 573–74 (7th Cir.1989). This standard is satisfied if the officers "knew or should have known" of the practices. *Id.* The court also stated "the degree of participation in business affairs is probative of knowledge." *Id.* at 574.

The ALJ concluded that over a six-year period appellee participated extensively in the creation, development, and deceptive practices of two corporations, including the design and control of the sales process. Additionally, he was an officer in each corporation, a shareholder in one of them, and he received benefits from the corporations. CPD adopted the ALJ's decision.

We conclude that, based on appellee's violations of the Consumer Protection Act, and the receipt of benefits from the corporations, factual findings that do have preclusive effect, appellee could be held liable for restitution. There is no issue before us as to whether the amount of restitution was properly computed.

### 3.

■ Appellee contends that the circuit court erred in holding that CPD could assess $265,000 in civil penalties against him because such assessment was arbitrary and capricious. Without deciding whether the issue is entitled to preclusive effect even if there was insufficient evidence to support it, we conclude that there was sufficient evidence to support the

CPD's decision. Under the Consumer Protection Act, "[a] merchant who engages in a violation of this title is subject to a fine of not more than $1,000 for each violation." Section 13–410(a). A merchant is defined as "a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty, or consumer credit." Section 13–101(g). There was ample evidence to support appellee's involvement as a merchant and his violation of the Act.

The ALJ/CPD found that Continental made at least 40 sales per month to Maryland consumers and that at least one unfair or deceptive trade practice was committed in connection with each sale. Consequently, at least 260 sales were made to Maryland consumers during the period of one year prior to the filing of the action. Sufficient evidence was presented to support CPD's determination. Additionally, there was sufficient evidence to support CPD's findings with respect to appellee's involvement in deceptive practices, including the development of sales procedures and forms and false representations to consumers. Appellee actively participated in the operations of the corporations and knew about deceptive trade practices by other agents of the corporations.

**JUDGMENT REVERSED WITH RESPECT TO THE AWARD OF $6,000,000 RESTITUTION AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR THE ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION; JUDGMENTS OTHERWISE AFFIRMED; COSTS TO BE PAID BY APPELLEE.**