Dear Mr. Steven Larsen
You have requested our opinion on the relationship between the Maryland Insurance Administration and its head, the Insurance Commissioner, on the one hand, and the Maryland Automobile Insurance Fund ("MAIF" or "the Fund"), on the other hand, in four areas. First, with respect to consumer complaints concerning the settlement of claims, you ask whether the Unfair Claim Settlement Practices Act applies to MAIF and, more specifically, whether the Commissioner may sanction MAIF for violations of that Act. Second, you ask whether the Commissioner may review a MAIF decision to cancel a policy prospectively. Third, you ask whether the Commissioner may reverse or modify a MAIF decision to void a policy ab initio. Finally, you ask whether the Commissioner may order MAIF or its producers to make restitution or to pay fines for other violations of the Insurance Article, such as those related to rating or underwriting.
In our opinion, the Unfair Claim Settlement Practices Act applies to MAIF. If the Commissioner finds that MAIF has violated the Act, the Commissioner may order MAIF to discontinue the unfair practice, and to make restitution to a claimant based on a violation of the Insurance Article that relates to a failure by MAIF to abide by its contractual obligations in an insurance policy. Other remedies ordinarily available to the Commissioner under the Act — such as revocation of an insurer's certificate of authority — do not pertain to MAIF.
With respect to MAIF's cancellation of a policy, the MAIF statute provides the exclusive procedure for administrative review. That statute assigns to the Fund, and a special appeal board, the application of the statutory eligibility criteria for MAIF coverage; the Commissioner has no independent review authority. Nor would the Commissioner ordinarily have authority to review a MAIF decision to void a policy ab initio on the grounds that the insured deliberately misrepresented eligibility for MAIF insurance. However, when MAIF rescinds a policy after a claim has been filed, the Commissioner has authority under the Unfair Claim Settlement Practices Act to review MAIF's finding of deliberate misrepresentation, unless MAIF has obtained court approval for the retroactive cancellation of the policy.
Finally, the Commissioner may impose administrative sanctions on MAIF or its producers for other violations of the State insurance law if, under the principles outlined in this opinion, the relevant provision of the Insurance Article explicitly or implicitly grants the Commissioner administrative authority over MAIF or its producers.
 I MAIF A. Creation and Purpose of MAIF
MAIF was created in 1972 as part of a "sweeping overhaul" of the automobile insurance laws in Maryland. Chapter 73, Laws of Maryland 1972, now codified at Annotated Code of Maryland, Insurance Article ("IN"), §§ 20-101 et seq.; Government EmployeesInsurance Company (GEICO) v. Insurance Commissioner, 273 Md. 467,480, 330 A.2d 653 (1975). As part of that overhaul, the General Assembly also enacted the compulsory motor vehicle insurance law, which requires that each owner of an automobile registered in Maryland maintain a liability insurance policy with specified minimum coverage. See Annotated Code of Maryland, Transportation Article ("TR"), § 17-101 et seq.; see generally 85 Opinions of theAttorney General ___ (2000) [Opinion No. 00-001 (January 24, 2000)]; 71 Opinions of the Attorney General 173, 175-76 (1986).
MAIF's enabling statute assigned two roles to MAIF. First, the Fund was designed to supplant the previous assigned risk plan and to make automobile liability insurance available to Maryland drivers unable to obtain insurance in the private sector. IN § 20- 301(a); Jennings v. Government Employees Insurance Company(GEICO), 302 Md. 352, 356, 488 A.2d 166 (1985). In this capacity MAIF acts like other insurers — it issues policies, charges and collects premiums, and adjusts, settles, and pays claims.
Second, as successor to the Unsatisfied Claim and Judgment Fund, MAIF was designated to pay, "within specified limits, judgments entered against: (a) uninsured motorists; (b) known motorists beyond the reach of legal process; and (c) unknown operators of undiscovered vehicles." Harrison v. Motor VehicleAdministration, 302 Md. 634, 639, 490 A.2d 694 (1985). See alsoGEICO, 273 Md. at 480; Janquitto, Maryland Motor VehicleInsurance (2d ed.) at p. 855.
The Court of Appeals recently summarized the purpose of the compulsory insurance law and MAIF's role within it:
 The thrust of the 1972 law was to extend . . . insurance protection . . . . The Maryland response to the problem of uninsured motorists was the creation of MAIF, to provide insurance for those persons who could not obtain it in the private market, the preclusion of arbitrary cancellations and non-renewals of policies by private insurers, and the civil and criminal penalties attached to owning or driving an uninsured vehicle.
MAIF v. Perry, 356 Md. 668, 741 A.2d 1114, 1118 (1999).
B. Regulation of MAIF as an Insurer
As a general rule, MAIF in its capacity as an automobile liability insurer operates under the same regulatory scheme as a private sector insurer, except where the General Assembly has explicitly provided otherwise. This conclusion, which is supported by the general design of the Insurance Article, has been the longstanding interpretation of this Office.
First, MAIF falls within the definition of "insurer" set forth in the Insurance Article. Under that definition, an insurer is any "person engaged as indemnitor, surety, or contractor in the business of entering into insurance contracts." IN § 1-101(v). The MAIF statute makes clear that MAIF is in the business of entering into insurance contracts: "[o]n payment of the premium set by the Fund, the Fund is authorized to and shall sell, issue, and deliver a[n automobile liability insurance] policy." IN § 20-502. The only question is whether MAIF is a "person" for purposes of the Insurance Article.
The Insurance Article defines "person" as "any individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, partnership, firm, association, corporation, or other entity." IN § 1-101(bb). At first blush, this definition appears broad enough to encompass MAIF. On the other hand, MAIF is considered a State agency for various purposes[1], and ordinarily the term "person" in a statute does not include a State agency "unless an intention to include these entities is made manifest by the Legislature." UnnamedPhysician v. Commission on Medical Discipline, 285 Md. 1, 12,400 A.2d 396 (1979). See also Board of Child Care v. Harker,316 Md. 683, 690-91, 561 A.2d 219 (1989) ("the State is not bound by an enactment of the General Assembly unless the enactment specifically names the State or manifests a clear and indisputable intention that the State is to be bound"); 85 Opinions of the Attorney General ___ (2000) [Opinion No. 00-001 (January 24, 2000)], slip op. at pp. 4-5.
The General Assembly has made clear in several provisions of the Insurance Article that MAIF is subject to regulation as an insurer by the Commissioner.[2] See, e.g., IN § 2-104
(Commissioner may require various types of insurers, including MAIF, to pay administrative cost of licensing services); IN § 2-502
(MAIF defined as "insurer" for purposes of assessment of insurance regulation fee); IN § 6-101 (MAIF subject to premium tax assessed against insurers). Most persuasive are explicit references in the MAIF statute itself to the Commissioner's regulatory authority over MAIF. For example, in providing that MAIF is subject to an independent audit by the Legislative Auditor, the statute states that such an audit "is in addition to and not instead of any audit or regulatory authority of the Commissioner." IN § 20-304(c). Moreover, the insurance premiums that MAIF charges are "subject to the approval of the Commissioner." IN § 20-507(a)(3). These provisions support the conclusion that the Commissioner generally has the same regulatory authority over MAIF as over any other automobile liability insurer.[3]
In a series of opinions issued shortly after the creation of MAIF, Attorney General Burch examined the nature of the Fund and concluded that, as an automobile liablity insurer, the Fund operates within the same legal framework as a private sector insurer, including regulation by the Commissioner, except where the General Assembly has explicitly, or by necessary implication, provided otherwise. In determining that MAIF funds are not State monies, a 1973 opinion explained that "MAIF is an independent enterprise engaged in the business of an automobile liability insurer [and] operates according to standard procedures in the casualty insurance business." 58 Opinions of the Attorney General
88, 89-90 (1973). A later opinion concluded that the Comptroller has no authority, and the State Treasurer only limited responsibility, with respect to MAIF's monies, reasoning that MAIF's finances are subject to regulation by the Commissioner. 58Opinions of the Attorney General 417 (1973). That opinion stated that "[t]he Legislature necessarily had to give MAIF the same power to deal with its receipts as is possessed by any other automobile casualty insurance carrier since such insurance companies, and MAIF is not exempted, are closely regulated by the Insurance Commissioner . . . ." Id. at 423. A third opinion that same year summarized:
 [T]he legislative intent was that MAIF be governed by the same rules and regulations pertaining to the insurance industry generally except where [the MAIF subtitle] (or any other statute specifically mentioning MAIF) otherwise provides.
58 Opinions of the Attorney General 427, 427 (1973).[4]
 II The Unfair Claim Settlement Practices Act and MAIF
A. Application of the Act to MAIF
More than a decade after the creation of MAIF, the Legislature enacted the Unfair Claim Settlement Practices Act ("the Act") to provide an administrative remedy for consumer complaints about a variety of unfair practices by insurers.[5]
Chapter 442, Laws of Maryland 1986, now codified at IN §§ 27-301 etseq. The Act identifies violations in two categories. First, it defines certain actions — for example, misrepresentation of policy provisions or refusal to pay a claim for an arbitrary and capricious reason — that, by their very nature, are unfair claim settlement practices. IN § 27-303. Second, it specifies other actions that, when "committed with the frequency to indicate a general business practice," constitute unfair claim settlement practices. IN § 27-304. The Act also sets forth various penalties that may be imposed to remedy a violation of the Act. IN § 27-305.
The scope of the Act is broad. It applies to:
[E]ach individual or group policy, contract, or certificate of an insurer or nonprofit health service plan that:
(1) is delivered or issued in the State;
 (2) is issued to a group that has a main office in the State; or
 (3) covers individuals who reside or work in the State.
IN § 27-302(a). However, the Act does not apply to reinsurance, workers' compensation insurance, or surety insurance. IN § 27-302(b).
The Legislature did not explicitly exclude MAIF from the Act.[6] Nor is there anything in the legislative history of the Act to suggest that the General Assembly contemplated that MAIF, a major provider of automobile liability insurance in the State,[7] would be exempt. The absence of a blanket exclusion of MAIF is significant, as the General Assembly has explicitly exempted MAIF from certain other requirements of the insurance law. See, e.g., IN § 4-301(d)(2) (exempting MAIF from risk-based capital standards applicable to other insurers); IN § 11-303(a)(7) (exempting MAIF from rate-making provisions); IN § 27-605
(exempting MAIF from cancellation procedures that apply to other automobile liability insurers).
In each of these instances in which it has exempted MAIF from a provision that otherwise applies generally to insurers, the Legislature has addressed the particular issue in the MAIF statute itself. For example, MAIF is excluded from the risk-based capital standards applicable to other insurers. IN §§ 4-301 etseq. Instead, detailed provisions of the MAIF statute govern maintenance of Fund accounts. IN §§ 20-301 through 20-411. Similarly, while MAIF is excluded from the general rate-setting provisions of IN §§ 11-301 et seq., it must set its rates in accordance with criteria set forth in IN § 20-507, subject to the approval of the Commissioner. Finally, while MAIF is exempt from the cancellation rules of IN § 27-605 that apply to other insurers, it is subject to the special cancellation rules of IN §§ 20-516 and20-517. By contrast, the MAIF statute contains no alternative administrative mechanism for resolution of complaints of unfair claim settlement practices.
Thus, although the Act does not explicitly state that it applies to complaints against MAIF, neither does it exempt MAIF from its scope. Further, nothing in the MAIF statute or any other section of the Insurance Article explicitly or implicitly exempts MAIF from the Act's coverage. In our opinion, the Legislature intended to encompass the Fund within the Unfair Claim Settlement Practices Act. Therefore, as an insurer, MAIF is subject to the Act and to the Commissioner's authority to investigate[8] and resolve complaints concerning its claim settlement practices.
B. Commissioner's Authority to Sanction MAIF
To remedy an unfair practice, the Commissioner may impose various penalties depending on the nature of the violation. IN § 27-305.[9] If the Commissioner finds that an insurer has committed a specific unfair practice in violation of IN § 27-303, the Commissioner may issue a cease and desist order, impose a penalty of up to $2,500 per violation, and require the violator to make restitution to each claimant. IN §§ 27-103, 27- 305(a), (c).
For a general business practice that violates IN § 27-304, the statute cross-references a variety of administrative remedies found in other sections of the Insurance Article.[10] IN § 27-305(b). In particular, the Commissioner may issue a cease and desist order mandating that the insurer discontinue the unfair practice (IN § 27-103); impose a monetary penalty ranging from $100 to $125,000 for each violation (IN § 4-113(d)); require the violator to make restitution to a claimant (IN §§ 4-113(d) and27-305(c)); suspend, revoke, or refuse to renew the insurer's certificate of authority (IN § 4-113); and issue a cease and desist order prohibiting the insurer from writing insurance in the State (IN § 4-114).
Although the Act applies generally to MAIF, it does not necessarily follow that all penalties in the Act may be imposed against the Fund. Some of the penalties are inapplicable to MAIF, given its statutory mandate and the basis of its operating authority.
 1. Cease and Desist Orders
The most basic remedy in the Commissioner's arsenal is the authority to order the violator to halt the practice. Upon finding that a person has engaged or is engaging in conduct in violation of the Insurance Article, the Commissioner "shall order the person to cease and desist from the act or practice." IN § 27-103(a). MAIF is not explicitly excepted from this provision nor is there any reason to imply an exception. Absent the ability to order termination of unlawful conduct, the Commissioner's regulatory authority over MAIF could be meaningless. In our judgment, the Commissioner has authority to order MAIF to cease and desist from violating the Act.
2. Suspension or Revocation of Certificate of Authority
The Commissioner's powers under IN § 4-113(a) and (b) to suspend, revoke, or refuse to renew a certificate of authority do not apply to MAIF. A certificate of authority is an authorization by the Commissioner for an insurer to do business in Maryland. IN §§ 1-101(l), 4-101. By contrast, MAIF is a statutorily created insurer that does not operate under a certificate of authority.See Special Revisor's Note to IN § 1-101(h) (MAIF "is authorized by statute to issue policies . . . . [H]owever, [MAIF] does not hold a certificate of authority . . . ."); § 4-101 ("Except as otherwiseprovided in this article, a person may not act as an insurer . . . unless the person has a certificate of authority . . . ." (emphasis added)). Accordingly, remedies directed to a certificate of authority cannot be imposed on MAIF.
 3. Order to Stop Writing Insurance
Under IN § 4-114, upon making certain findings,[11] the Commissioner may order an insurer who has violated IN § 27-304
"immediately to cease and desist from writing insurance." MAIF is not explicitly exempted from this remedy. However, in creating MAIF as the automobile insurer of last resort, the General Assembly directed that the Fund shall issue a policy to an eligible applicant. IN § 20-502(a). There is no indication in the Insurance Article that the General Assembly intended to authorize the Commissioner to prevent MAIF from issuing new insurance policies, based upon problems with the settlement of claims under existing policies. Absent a clear directive by the General Assembly, we conclude that the Commissioner may not issue an order under IN § 4-114 to prevent MAIF from writing insurance policies altogether.
 4. Restitution
The Commissioner's authority to require the Fund to make restitution turns on whether sovereign immunity would prohibit an award of monetary relief against MAIF. "The applicability of sovereign immunity in a particular case . . . turns on: (1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity, either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." ARA Health Servicesv. Department of Public Safety and Correctional Services,344 Md. 85, 91-92, 685 A.2d 435 (1996). In our opinion, even if MAIF is otherwise protected by sovereign immunity,[12] the General Assembly has waived any immunity that MAIF may enjoy against an order of restitution by the Commissioner based upon contract principles.
MAIF enters into insurance contracts with those that it insures. "In Maryland, insurance policies are treated like other contracts." Mesmer v. MAIF, 353 Md. 241, 252, 725 A.2d 1053
(1999). A dispute about the validity of a policy or an insurer's obligations under the policy is the basis for a contract claim against the insurer. Id. Thus, even if MAIF otherwise is protected against suit by the doctrine of sovereign immunity, in our view, the General Assembly has waived any such immunity related to contract claims. IN § 20-505(a) (authorizing Executive Director of MAIF to settle, compromise, and defend claims against the Fund); cf. SG § 12-201 (waiving sovereign immunity in contract actions).
In the context of the insurance code, the purpose of the administrative remedy of restitution is to avoid unjust enrichment. Magan v. Medical Mut. Liab. Ins. Soc. of Maryland,331 Md. 535, 545, 629 A.2d 626 (1997). Under the insurance code, the Commissioner may order an insurer to pay direct financial damages that result from an improper denial of coverage. Id. In our opinion, the Commissioner has authority to award restitution against MAIF for a violation of the Unfair Claim Settlement Practices Act, at least to the extent that the right to restitution relates to a breach of the contract between MAIF and its insured[13] and the amount of restitution represents unjust enrichment of MAIF. An award of restitution in this context could include the amount of an adverse judgment or a reasonable settlement, and related expenses. See Magan,331 Md. at 545.
5. Fines
The statutory authorization for MAIF to settle claims does not implicitly or explicitly extend to the payment of fines. Although it may be possible to infer from other statutes[14] a legislative intent to grant the Commissioner authority to impose fines against MAIF, the issue is far from clear. There is no unambiguous indication of legislative intent to subject MAIF to the fining authority of the Commissioner. Accordingly, in our opinion, the Commissioner does not have authority to fine the Fund.
 III
Commissioner Review of MAIF Decision to Cancel A Policy Prospectively
A. Placement of MAIF Coverage
MAIF's ability to cancel a policy is described in the statutes and regulations governing the placement of MAIF policies. MAIF policies are placed by "producers" — in general, any insurance broker or agent qualified by the Maryland Insurance Administration to sell insurance in the State. IN § 20-101(k); COMAR 14.07.02.01A. Unlike other automobile insurers, MAIF does not have its own agents and exercises only limited control over the producers who place its policies.[15] To become eligible to place coverage with MAIF, a producer need only submit to MAIF a copy of his or her certificate issued by the Insurance Administration. See COMAR 14.07.02.01H. Producers are compensated by a commission equaling no more than 10 per cent of the total premium. IN § 20-512(a).
MAIF is liable for coverage from the time a producer binds coverage. IN § 20-509(d). A producer may bind a MAIF policy if the applicant submits a properly completed application for insurance and pays the appropriate premium. IN § 20-509; COMAR 14.07.02F. Producers may only bind the minimum coverage required under the compulsory insurance law. COMAR 14.07.02.01E(3).
MAIF's regulations require a producer to verify the applicant's eligibility for coverage on each new policy application. COMAR 14.07.02.03D. An applicant must satisfy four basic criteria to qualify for coverage by the MAIF insured division: the applicant must (1) possess a Maryland driver's license or own a vehicle registered in Maryland; (2) not be indebted to MAIF for prior policies; (3) have been rejected by two motor vehicle insurers or the applicant's current policy must have been cancelled or nonrenewed; and (4) be a Maryland resident.[16] IN § 20-502(a). An applicant's failure to meet those criteria warrants rejection of an application or cancellation of an existing MAIF policy.
B. MAIF Authority to Reject or Cancel a Policy
The MAIF statute grants the Fund broad authority to reject applications and to cancel policies, even after coverage has been bound by a producer. The statute explicitly addresses two categories of cancellation: (1) cancellation during a 60-day review period after a producer has bound coverage; and (2) cancellation based on subsequent events. The statute is less clear about a third category of cancellations — those involving an applicant's lack of qualification for a MAIF policy discovered after the 60-day review period.[17]
Within 60 days after coverage is bound by a producer, MAIF may cancel coverage for three basic categories of reasons: (1) the applicant is not eligible for MAIF insurance; (2) the applicant has failed to pay the premium; (3) an event subsequent to the issuance of the policy, such as loss of a driver's license, has rendered the applicant ineligible for coverage. IN §§ 20-509(e), 20-516. If it cancels a policy, MAIF must notify the applicant, the producer, and the Motor Vehicle Administration ("MVA"). IN § 20-509(f)(1). MAIF remains liable to pay claims that arise before cancellation becomes effective. See 58 Opinionsof the Attorney General 427, 433 (1973). If the cancellation results from the applicant's failure to pay the premium, MAIF must allow the applicant "a reasonable opportunity to pay" the premium. IN § 20-509(f)(3).
In addition, MAIF may cancel a policy "at any time" for nonpayment of premiums or because the applicant's or policyholder's driver's license has been suspended or revoked.[18] IN § 20-516(a)(2), (3). A policy may also be canceled if the temporary registration of the covered vehicle has expired and the vehicle has not been properly registered in Maryland. IN § 20-516(d).
If a policy is canceled for any reason other than nonpayment of a premium, the applicant may appeal the cancellation administratively. IN § 20-517(a). The policy remains in effect for the duration of the appeal. IN § 20-517(c)(2).
C. Statutory Procedures for Appeal of Cancellation Decision
A person whose application has been rejected or whose insurance has been canceled by MAIF may appeal MAIF's decision to a special, three-member review board.[19] See IN § 20-517(a). The board is comprised of two members of the Board of Trustees of the Fund and the Insurance Commissioner or the Commissioner's designee. The Executive Director of MAIF may not sit on a special board. IN § 20-517(b). The special board may hold a hearing and affirm, reverse or modify the decision to cancel the policy. The existing policy of the appellant remains in effect during the course of the appeal. IN § 20-517(c). An appeal must be filed within 10 days of receipt of notice of rejection or cancellation. This brief period for filing an appeal is apparently designed to ensure that MAIF does not remain liable for potential claims if the cancellation is ultimately affirmed by the special board.
The procedure for review of a cancellation of an automobile insurance policy by a private sector insurer is governed by a separate section of the Insurance Article under which a policyholder may file a "protest" with the Commissioner. IN § 27-605. MAIF is explicitly excluded from this procedure. See IN § 27-605(a). Thus, in this instance, the Insurance Article distinguishes MAIF from other insurers with respect to the rules and regulations governing the insurance industry generally. Cf.
58 Opinions of the Attorney General 427, 432 (1973) (general rule on cancellation of insurance due to innocent mistake by the applicant does not apply to MAIF as the General Assembly has specifically identified why and when a MAIF policy may be rejected or canceled).
D. Exclusivity of MAIF Appeal Process
You have asked whether the appeal process of IN § 20-517 is the exclusive means to review a MAIF decision to cancel a policy. In other words, does the Commissioner have any independent authority to review MAIF cancellation decisions?
In our opinion, the appeal process in the MAIF statute is the exclusive means for review of a prospective cancellation decision. The Insurance Article specifically excepts MAIF from the cancellation provisions applicable to private insurers and includes special provisions, including a specific review mechanism, for MAIF cancellation decisions. The cancellation provisions of the MAIF statute — at least as they apply to prospective cancellations — are detailed and explicit. They clearly designate the special board as the administrative authority to review a MAIF decision to cancel a policy. Moreover, that procedure includes the Commissioner or the Commissioner's designee as one of the members of the review board. It would be inconsistent with this statutory scheme for the Commissioner to exercise a veto over the board's decisions. Thus, apart from the Commissioner's role as a member of a special board under the MAIF statute, the Commissioner has no authority to review a MAIF decision to cancel a policy prospectively.
 IV Commissioner Review of MAIF Decision to Void a Policy Ab Initio
You have asked whether the Commissioner has authority to reverse or modify a MAIF decision to void a policy ab initio. While we do not believe that the Commissioner has authority to reverse a MAIF decision to cancel a policy, the Commissioner does have limited authority to review the retroactive cancellation of a policy when MAIF denies a claim based on the voiding of the policy. To explain this conclusion, we must first review the source of MAIF's authority to cancel a policy retroactively.
The statutory source of MAIF's power to declare a policy voidab initio — i.e., to rescind a policy or cancel it retroactively[20] — is not absolutely clear. IN § 20-502(e)(1) states simply that "[i]f a prospective insured fails to qualify [for MAIF insurance], any policy issued is void. . . ." That section establishes no time limit, conditions, or procedures for determining whether a policy is "void." Nor, on its face, does it require or authorize any action by MAIF to render a policy void.
However, another section of the MAIF statute that specifically addresses MAIF's "cancellation" of a policy as a result of an applicant's failure to satisfy eligibility criteria, among other things, states that a cancellation by MAIF "may occur not later than 60 days" after coverage is bound by a producer and gives the applicant a right to appeal that determination. IN § 20-509(e)(2), (f). This suggests that MAIF is prohibited from cancelling a policy on eligibility grounds after the 60-day period. See Annotated Code of Maryland, Article 1, § 26 ("may not" and similar constructions to be interpreted as a mandatory prohibition). Moreover, the appeal provision referenced in IN § 20-509 states that a policy remains in effect for the duration of an appeal, thus suggesting that cancellations subject to appeal operate prospectively. IN §§ 20-516(f), 20-517(c)(2). This appears to be inconsistent with the notion that a cancelled policy is "void."
In its administrative regulations concerning the binding of coverage by its producers, MAIF has forged a middle ground. Under those regulations, a policy issued to an ineligible applicant is "void" if MAIF subsequently determines that the applicant made "material misrepresentations as to the applicant's eligibility before coverage was bound." COMAR 14.07.02.02C. However, the regulations do not specify a time period or the procedures under which such a determination is to be made or reviewed.
The remainder of this section of this opinion traces the development of the law on MAIF's authority to cancel policies retroactively on eligibility grounds and attempts to harmonize the seemingly disparate statements of MAIF's power to declare a policy void.
A. 1973 Attorney General Opinion
The ability of MAIF to cancel a policy retroactively was recognized in an Attorney General opinion issued shortly after MAIF was created. 58 Opinions of the Attorney General 427 (1973). In that opinion, Attorney General Burch considered MAIF's liability for claims with respect to policyholders who were later determined to be ineligible for coverage. After reviewing the statute's directives for binding MAIF coverage, then codified in Article 48A, § 243B(d),[21] the opinion concluded that MAIF could cancel a policy on the ground that the applicant was ineligible for coverage, if the lack of qualification was discovered within the 60-day period after coverage became effective. Otherwise, "MAIF is on the risk for the term of the policy." Id. at 434.[22] Incorrect information provided by the applicant or the producer concerning the applicant's eligibility, if provided in good faith, would not be a basis for cancelling the policy unless the mistake were discovered within the 60-day review period.
The one exception to this rule was that MAIF could void a policy ab initio "where an insured has intentionally misrepresented his eligibility to the agent or broker, or the insured has colluded with the agent or broker in fraudulent misrepresentation of eligibility." Id. at 430-31. Attorney General Burch concluded that, in such cases, the policy was voidable at the option of MAIF and the Fund could disclaim coverage for losses. This conclusion was drawn, not from the MAIF statute, but from the common law right of rescission available to insurers under Maryland case law. Id. Unlike the general rule for private sector insurers, which permitted rescission for both fraudulent and innocent, but material, misrepresentations, the 1973 opinion concluded that MAIF's right to rescind was limited to fraudulent or recklessly negligent misrepresentations.[23]
Attorney General Burch summarized MAIF's power to cancel a policy for lack of eligibility:
 [I]t is our opinion that the Legislature has carefully balanced the competing interests involved and has arrived in Section 243B(d)(3) with a reasonable procedure designed to protect the interests of the driving public, the applicant for insurance and the private insurance companies by allowing MAIF to cancel coverage for lack of eligibility, but remaining liable (absent fraud of the applicant) for any losses which may occur during the period of time that coverage was effective.
Id. at 435.
Subsequent to the 1973 Attorney General opinion, the Legislature has amended the MAIF statute, MAIF has adopted an administrative interpretation of its authority to rescind a policy, and the Court of Appeals has recognized that the common law power of a private insurer to rescind a policy has been abrogated. We must consider whether these intervening events signify an adjustment of the "careful balance" that Attorney General Burch outlined in the 1973 opinion.
B. 1983 Amendment of MAIF Statute
1. Reference to "Void" Policies
In 1983 the Legislature amended the MAIF statute to include specific reference to policies "void ab initio" as a result of the insured's lack of eligibility. See Chapter 617, Laws of Maryland 1983, now codified at IN § 20-502(e)(1). That legislation was the product of a legislative task force charged with devising solutions to the dramatic increase in the number of uninsured motorists in Maryland during the decade following the passage of the compulsory insurance law. See id., Preamble; Final Report of the Insurance Task Force of the House Economic Matters Committee (January 1983) ("Task Force Report") at pp. 5-9; Senate Economic Affairs Committee Report (House Bill 633) at p. 4 ("The purpose of this bill is to promote greater enforcement of the laws requiring that . . . any vehicle registered in Maryland be insured.").
To ensure compliance with the compulsory insurance law, the bill amended portions of the Transportation Article to tighten MVA's enforcement of the law by adding documentation requirements, increasing fines, and imposing points for certain violations. The changes to the MAIF statute derived from the Task Force's observation that many individuals would obtain insurance at the time that their vehicle tags were renewed, but cancel the policy shortly thereafter. Task Force Report at p. 6. The bill made it less attractive for an insured to cancel a MAIF policy by providing that a producer's commission would be "fully earned" when "a valid contract of insurance" was made with the Fund and the premium was paid. This meant that the producer's commission would be deducted from any amount refunded if a MAIF policy was cancelled, presumably reducing the incentive for an individual to drop insurance coverage. (Prior to this amendment, an insured who canceled a MAIF policy would receive a refund including part of the producer's commission). However, under the amendment, the producer would not earn a commission if the applicant did not pay the premium or was ineligible for a MAIF policy — in which cases the legislation termed the policy "void ab initio."[24] This presumably reduced any incentive for a producer to obtain commissions by ignoring eligibility requirements when placing policies. The Legislature believed that it was subjecting MAIF policyholders to the same conditions as policyholders of private insurers.[25]
This provision was recodified as IN § 20-502(e) in 1996 and subsequently amended in 1998 to permit MAIF to charge a processing fee when it canceled a policy because the applicant failed to satisfy the Maryland residency condition. In addition, the Legislature directed the Fund to refer to the Insurance Fraud Division of Maryland Insurance Administration, for investigation and possible prosecution, any person whose policy was cancelled for lack of eligibility. Chapter 400, Laws of Maryland 1998,codified at IN § 20-502(e)(2).[26]
When it added the provision declaring policies issued to ineligible applicants "void ab initio," the Legislature left intact the existing 60-day review period for cancellation of MAIF policies for, among other things, lack of eligibility. Former Article 48A, § 243B(d)(4), now codified at IN § 20-509(e)(2).
2. Construction of IN § 20-502(e)(1)
One might read the word "void" in IN § 20-502(e)(1) to declare invalid any MAIF policy issued to an ineligible person or to confer unlimited authority on MAIF to rescind a policy issued to an ineligible person at any time. However, in our opinion, this section does not confer such authority for several reasons.
The terms "void" and "void ab initio," when used with respect to a contract, generally signify that the contract is "of no legal effect" or "null from the beginning" in contrast with a "voidable" contract which is "valid until annulled." Black's Law Dictionary
(7th ed. 1999) at p. 1568 ("void," "voidable"). However, it is often the case that the term "void" is used in statutes to mean "voidable." Id. The context in which the term is used determines it meaning in a particular statute. See Romm v. Flax,340 Md. 690, 668 A.2d 1 (1995) (construing term "void" in section of Real Property Article concerning real estate sales contract to mean voidable at the option of one of the parties to a contract); 79Opinions of the Attorney General ___ (1994) [Opinion No. 94-017 (March 11, 1994)], slip. op. at p. 6 n. 5. Thus, the use of the term "void" by itself does not mean that the Legislature intended to invalidate all policies issued to ineligible applicants.
In this instance, IN § 20-502(e)(1) must be read consistently with IN § 20-509(e), the portion of the statute that specifies the conditions for cancellation of a policy by MAIF. IN § 20-509(e) permits MAIF to cancel coverage within 60 days if, among other things, the applicant is not qualified for MAIF insurance. That 60-day limitation would be meaningless if a policy issued to an ineligible applicant were necessarily invalid or if MAIF were able to cancel a policy retroactively under IN § 20-502(e)(1) at any time.
Moreover, the language of IN § 20-502(e)(1) itself indicates that it generally pertains to MAIF's evaluation of a policy that a producer has bound and whether the producer is entitled to a commission: "If a prospective insured fails to qualify . . . any policy issued is void and a commission may not be paid by the Fundto a producer." IN § 20-502(e)(1). See also Janquitto, MarylandMotor Vehicle Insurance (2d ed.) at p. 831 (construing IN § 20-502(e)(1) to mean that MAIF can, within 60 days, declare a policy void for lack of qualification).
In our opinion, IN § 20-502(e) and IN § 20-509(e) can be harmonized in the following manner. In creating the 60-day deadline in IN § 20-509(e)(2) for MAIF to cancel a policy bound by a producer, the Legislature clearly contemplated that some ineligible persons would retain MAIF insurance despite a lack of qualification, if their lack of qualification was not discovered within the 60-day review period. Presumably, the Legislature accepted this as the price for certainty in the binding of MAIF coverage. However, we think it unlikely that, in providing a limited period for MAIF to review the eligibility of an applicant, the Legislature intended to benefit an applicant who deliberately attempted to thwart that review. Indeed, the mandate in IN § 20-502(e) that ineligible persons be referred to the Insurance Fraud Division for investigation and prosecution suggests that the Legislature anticipated that the voiding of policies would be related to deliberate misrepresentation.
Thus, in our opinion, MAIF's authority to rescind a policy because the applicant is not eligible for coverage by the Fund is ordinarily limited to the 60-day review period after coverage is initially bound. However, MAIF still has authority to void a policy retroactively without regard to the 60-day period if the insured has intentionally misrepresented eligibility for MAIF coverage and thus defeated MAIF's ability to make an expeditious determination about eligibility.
C. MAIF Administrative Interpretation
In 1988, MAIF amended its binding rules for producers to provide that a policy would be void as a result of material misrepresentation by an applicant concerning eligibility for MAIF coverage. That regulation read as follows:
 If MAIF subsequently determines that an applicant has made material misrepresentations as to the applicant's eligibility before coverage is bound, there is no coverage bound and any policy or endorsement issued in reliance on the incorrect eligibility information is void.
COMAR 14.07.02.02C (effective June 27, 1988), published at
14:26 Md. Reg. 2804, 2805 (December 18, 1987). With minor changes, that regulation remains in effect today.[27] This administrative construction of the statute, embodied in a formal rule for more than a decade, by the agency charged with administering the eligibility criteria, would likely receive substantial deference from the courts. Marriott Employees Federal Credit Union v. MotorVehicle Administration, 346 Md. 437, 445, 697 A.2d 455 (1997);Magan v. Medical Mut. Liab. Ins. Co., 331 Md. 535, 546,629 A.2d 626 (1993).
Under the regulation, ineligibility of the applicant alone does not result in the voiding of a policy; rather, it is conditioned upon a finding by MAIF that the applicant made a material misrepresentation as to his or her eligibility. Thus, consistent with our interpretation of IN § 20-502(e)(1), MAIF's administrative interpretation apparently construes an applicant's lack of eligibility to render a policy "voidable" rather than "void." Moreover, MAIF has not construed IN § 20-502(e) to broaden its authority to void policies beyond instances in which the applicant has misrepresented his or her eligibility before the binding of coverage.
The regulation does not state whether MAIF's determination must be made within the statutory 60-day period after the producer binds coverage.[28] As indicated above, to the extent that the regulation permits MAIF to cancel a policy retroactively after the 60-day review period, we believe it should be limited to instances of deliberate or recklessly negligent, rather than innocent, misrepresentation.
D. Abrogation of Common Law Right of Rescission of Private Insurers
The 1973 Attorney General opinion concerning MAIF's authority to void a policy ab initio was based in part on the common law right of an insurer to rescind a policy based on material misrepresentation by the insured. Subsequently, an opinion of this Office and a decision of the Court of Appeals both concluded that the compulsory insurance law abrogated, at least in part, a private insurer's right of rescind based on material misrepresentation. We must consider what, if any, effect the abrogation of a private insurer's common law right of rescission has on MAIF's authority.
1. 1986 Attorney General Opinion
In a 1986 opinion, this Office concluded that the enactment of the compulsory insurance law modified the common law right of an insurer to void a policy ab initio based on material misrepresentation by the insured. 71 Opinions of the AttorneyGeneral 173 (1986). In that opinion, Attorney General Sachs concluded that an insurer who believed that an insured had made material misrepresentations in an application could either pursue prospective cancellation of the policy under the procedures set forth in the insurance code or could seek a judicial declaration that the policy was void ab initio. However, the insurer could not unilaterally declare the policy void ab initio.
The opinion was based on the design of the compulsory insurance law, notably that "[c]ontinuous insurance coverage is essential to the effectiveness of a law mandating automobile insurance in fixed amounts." Id. at 176. To allow an insurer to terminate coverage "merely by declaring that the insured made a material misrepresentation on the insurance application . . . would leave a gaping hole in the statutory scheme." Id. at 179. In discussing the effect of rescission of a policy, the opinion did not distinguish between an innocent third party's claim and a claim by the insured for the insured's own injuries or damages. Nor did the opinion make any specific reference to cancellation of a MAIF policy.
 2. Van Horn Decision
In Van Horn v. Atlantic Mutual Insurance Company,334 Md. 669, 641 A.2d 195 (1994), the Court of Appeals concluded that the common law right of an insurer to rescind, or void ab initio, the insurance contract based on material misrepresentation had been abrogated completely with respect to parties not involved in the misrepresentation. Specifically, the Court concluded that an insurer could not declare a policy void ab initio in defense of claims asserted by innocent third parties injured by the insured. Like the 1986 Attorney General's opinion, the Court based its conclusion on the policies underlying the 1972 legislation that adopted the compulsory insurance law, created MAIF, and established detailed procedures for cancellation of policies. Chapter 73, Laws of Maryland 1972. The Court stated:
 The provisions for compulsory insurance on every Maryland automobile are made feasible by the creation of MAIF as an insurer of last resort. If a private insurer terminates a policy, MAIF is available to issue a new policy. If an insurer's termination of a policy is contested, [IN § 27-605(d)(4)(i)] requires that the policy stay in effect until the contest is resolved. The mandatory uninsured motorist coverage helps close a gap in liability coverage caused by irresponsible tort feasors who violate the compulsory insurance law. The PIP provisions are designed to provide some coverage by insurance policies regardless of fault. These statutory provisions complement each other in achieving the legislative purpose that there be continuous coverage for injuries incurred in motor vehicle accidents. Recognition of a common law contract right to void a motor vehicle insurance policy ab initio is utterly inconsistent with this legislative purpose.
334 Md. at 684.
On the facts of Van Horn itself, the Court noted that a retroactive cancellation of the policy would have the effect of leaving an automobile uninsured for a two-year period with no means available to the insured to replace that insurance at the time of cancellation. Id. at 684-85. The Court reasoned that this result would be at odds with the statutory policy of continuous insurance coverage:
 A retroactive cancellation of a motor vehicle insurance policy is also inconsistent with the policy termination procedures and requirements set forth in [IN §§ 27-501 and 27- 605], which permit only prospective cancellation, require that the insurance policy stay in force if the cancellation is protested, and contemplate the availability of an insurance policy from MAIF if the cancellation goes into effect, thereby guaranteeing continuous motor vehicle insurance coverage.
Id. at 685.
The Van Horn decision addressed retroactive cancellation only with respect to a claim brought by an innocent third party — i.e.,
an individual injured by the insured who had made a material misrepresentation to the insurer. The decision explicitly left open the question of whether an insurer may obtain a judicial declaration that the policy was void ab initio as to an insured's claims. Id. at 693 n. 8.[29] As MAIF was not involved in the case, the Court did not address whether its holding would apply to the Fund.
 3. Application to MAIF
Under the 1986 Attorney General opinion and the Van Horn
decision, any remaining authority of a private insurer to have a policy declared void ab initio based on intentional misrepresentation by the insured is limited. The insurer may not disclaim coverage in response to a claim by an innocent third party. Even if the insurer's right of rescission survives VanHorn as to claims by the insured who made the misrepresentation, under the 1986 Attorney General opinion the insurer must go to court to rescind the policy.
Neither Van Horn nor the 1986 Attorney General opinion had occasion to discuss MAIF's authority to void a policy. At least one commentator has suggested that the Van Horn decision limits MAIF's ability to void a policy ab initio. See Janquitto,Maryland Motor Vehicle Insurance (2d ed.) at p. 814 n. 111. However, rescission of a MAIF policy as a result of misrepresentation by the insured concerning eligibility is distinguishable from rescission by other automobile liability insurers.
First, unlike a private insurer's underwriting criteria, MAIF's eligibility criteria do not address the degree of risk MAIF is willing to accept. Rather, they represent the General Assembly's determination of the class of drivers and vehicles for which the State has created an insurer of last resort. Moreover, even if the term "void" in IN § 20-502(e)(1) is not construed to render invalid all MAIF policies issued to ineligible drivers, at the very least it references a category of insurance contracts voidable by MAIF.
Second, the rationale of both Van Horn and the 1986 Attorney General opinion does not apply as readily to an insurer of last resort as it does to a private automobile liability insurer. Both the 1986 opinion and the Van Horn decision found legislative intent to abrogate a private insurer's right of rescission based on the detailed cancellation procedures of IN § 27-605 and the public policy objective of the compulsory insurance law that there be continuous insurance coverage. Van Horn, 334 Md. at 684; 71Opinions of the Attorney General at 176.
While the MAIF statute also contains cancellation procedures, abrogation of MAIF's right of rescission is not essential to achieve universal and continuous insurance coverage for Maryland drivers. If a private insurer cancels an individual's policy, the individual has an opportunity to contest the cancellation, to obtain a policy from another insurer, or, as a last resort, to obtain a policy with MAIF.[30] As a result, innocent third party claimants have the benefit of continuous insurance coverage. Rescission by a private insurer would interfere with this design for continuous coverage.
By contrast, an individual ineligible for MAIF insurance particularly on the basis of non-residency — presumably would be ineligible for any automobile liability insurance under the Maryland scheme. Abrogation of MAIF's right of rescission would not serve the purpose of ensuring that the applicant has an opportunity to obtain substitute insurance under the Maryland scheme for it is likely that the applicant cannot do so. Rescission of a MAIF policy — particularly as to an individual who has misrepresented his or her eligibility — thus does not leave the "gaping hole" in the compulsory insurance law that the 1986 Attorney General opinion perceived would exist if a private insurer were allowed to rescind.
Thus, the compulsory insurance law does not necessarily demonstrate a legislative intent to abrogate the rescission authority of the insurer of last resort. Indeed, the ability to void a MAIF insurance contract is preserved in the MAIF statute — a key part of the compulsory insurance law in which both the VanHorn decision and the 1986 Attorney General opinion found abrogation of a private insurer's right to rescind. Until the Court of Appeals speaks definitively on this issue, we believe that MAIF's right to rescind policies on the basis of deliberate misrepresentation as to eligibility survives Van Horn.
E. Commissioner Review of Denial of Claim Against Policy Declared Void by MAIF
As indicated in Part III of this opinion, the Commissioner has no independent authority to review the Fund's application of the statutory eligibility criteria for MAIF coverage when the Fund rescinds a policy within the 60-day review period. In our opinion, however, if MAIF denies a claim by cancelling a policy retroactively after the 60-day review period on the basis of deliberate misrepresentation as to eligibility, the Commissioner has limited authority to review the finding of deliberate misrepresentation.
Under the MAIF statute, MAIF may rescind a policy if, within the 60-day period, it determines that the applicant is ineligible. Apart from the Commissioner's participation in the special appeal board under the MAIF statute, the Commissioner has no independent authority to review that decision. It is thus apparent that the Legislature has assigned to MAIF and its special appeal board the task of interpreting the eligibility criteria for MAIF coverage without additional oversight by the Commissioner.
However, the legislative delegation to the Fund of authority to apply the eligibility criteria for MAIF coverage does not imply that the Legislature meant for MAIF to be unregulated in its administration of claims that are denied because a policy has been declared void. Under the statutory scheme, MAIF's rejection of a policy bound by a producer does not necessarily mean that claims against the policy arising before cancellation are to be denied. Indeed, the statute governing the MAIF appeal process provides that coverage ordinarily remains in effect during an appeal to MAIF's special board. IN § 20-517(c)(2). Thus, consistent with the design of the compulsory insurance law, the MAIF statute contemplates continuous insurance coverage for the benefit of third party claimants.
MAIF's denial of a claim beyond the 60-day review period on the ground that the policy is void ab initio does not depend upon the application of the eligibility criteria alone. Rather, it also depends on a finding that the insured deliberately misrepresented facts material to eligibility. This is a distinct issue from whether the insured was in fact eligible for MAIF coverage at the time coverage was bound. Nothing in the MAIF statute assigns to MAIF exclusive authority to determine the circumstances under which a policy can be rescinded beyond the 60-day review period. In our opinion, the Commissioner may review whether a MAIF finding of a deliberate misrepresentation as to eligibility is an "arbitrary and capricious" reason for failing to settle a claim.See IN § 27-303(2).
In other words, MAIF could find, and the special board could affirm, that an insured was not in fact eligible for MAIF coverage. The Commissioner has no authority to review or modify that portion of the MAIF decision. However, to resolve a complaint under the Unfair Claim Settlement Practices Act, the Commissioner may review any additional determination by MAIF of deliberate misrepresentation by the insured that is the basis for MAIF's retroactive cancellation and refusal to settle the claim.[31] In particular, the Commissioner has authority to determine whether MAIF's decision to rescind the policy after the 60-day review period constituted an arbitrary and capricious refusal to pay the claim.
We realize that this interpretation creates some potential for seemingly disparate administrative rulings. For example, the Commissioner may be confronted with a complaint by a third party claimant against a policy for which the MAIF special board has affirmed a retroactive cancellation on appeal by the insured.[32] As outlined above, we do not believe that the Commissioner is bound by a determination by MAIF that the insured deliberately misrepresented eligibility and that the cancellation operates retroactively so as to deny the claim. However, the Commissioner may appropriately consider the process and the record developed by MAIF in determining whether MAIF's finding of deliberate misrepresentation was an arbitrary and capricious reason for denying the third party claim. Moreover, the Commissioner and MAIF might profitably enter into protocols for the coordinated review of complaints relating to claims against policies that MAIF has declared void.
Of course, to the extent that MAIF obtained court approval for retroactive cancellation of a policy — in a procedure analogous to that for private insurers described in the 1986 Attorney General opinion — the Commissioner would have no authority to review or modify that decision. A judicial decision approving retroactive rescission would not be subject to review or modification by the Commissioner.
 V Other Violations By MAIF and Its Producers
Finally, you ask whether the penalties set forth in IN § 4-113(d) are available against MAIF "if the Commissioner determines that MAIF or one of its agents or producers has violated another provision of the Insurance Article, such as those relating to rating or underwriting."
A. Other Violations by MAIF
IN § 4-113(d) authorizes the Commissioner to impose a monetary penalty against, or to require restitution by, a holder of a certificate of authority who has committed a violation that could warrant suspension or revocation of the certificate of authority. As explained in Part II.B of this opinion, the Commissioner has no authority to impose a fine on MAIF absent a waiver of sovereign immunity by the General Assembly. Because MAIF does not operate under a certificate of authority, the Commissioner's powers under IN § 4-113 ordinarily do not extend to MAIF.
However, as indicated in Part II.B.4 of this opinion, the Commissioner may require MAIF to make restitution, if MAIF violates a provision of the Insurance Article applicable to MAIF and if the Commissioner has jurisdiction over the violation. We note that some provisions of the Insurance Article, such as IN § 11-323, clearly apply to MAIF; other provisions, such as the Unfair Claim Settlement Practices Act, implicitly apply to MAIF; and yet other provisions, such as IN §§ 4-302 et seq., clearly do not apply to MAIF. In a particular context, the Commissioner may have authority to order MAIF to make restitution under other provisions of the Insurance Article, e.g., IN § 27-305.
With respect to rating violations, while MAIF is generally excluded from the rating provisions of the Insurance Article, its rates are subject to approval by the Commissioner. IN § 11-303(a)(7). Among the unfair trade practices set forth in the insurance code is the collection of premiums that differ from rates filed with and approved by the Commissioner. IN § 27-216(b). The statute defining this unfair practice includes a specific exception allowing the recovery of actual expenses incurred by a producer in placing coverage with MAIF. IN § 27-216(b)(2). That exception would be unnecessary if the statute did not encompass the placement of MAIF policies. If MAIF were to violate this section, the Commissioner could issue a cease and desist order under IN § 27-103.
We have not canvassed the universe of all possible violations of the insurance law by MAIF. However, as a matter of general guidance, to determine whether the Commissioner has authority over MAIF as to a particular alleged violation we would apply the analysis set out in this opinion. First, the general rule is that MAIF is to be regulated as any other insurer. Next, the specific provision must be reviewed in the context of the entire Insurance Article and with particular reference to the MAIF statute to determine whether an explicit or implicit exception to the general rule applies. Finally, the remedies available under the statute must be analyzed to determine which ones apply to MAIF.
B. Other Violations by Producers
Because IN § 4-113(d) pertains to insurers, it does not authorize the Commissioner to take action against a MAIF producer. However, because a producer is by definition a qualified broker or agent, IN § 20-101(k), the Commissioner has authority elsewhere in the insurance code to discipline a MAIF producer. For example, the Commissioner may deny, suspend, or revoke a certificate of qualification for, among other things, violations of the Insurance Article or other laws relating to insurance. IN § 10-126(a). Moreover, as noted above, the portion of the unfair trade practices statute relating to collection of premiums applies to MAIF policies; a producer who collects incorrect premiums is subject to discipline by the Commissioner under that statute.
We note that the MAIF statute and regulations establish a detailed procedure under which MAIF may terminate a producer's authority to bind coverage, if the producer violates MAIF's binding regulations or fails to pay money owed to MAIF. IN § 20-513, 20-514; COMAR 14.07.03. The Commissioner plays no role in those determinations. However, conduct that would support disciplinary action by MAIF against a producer may, in appropriate circumstances, also warrant action by the Commissioner.
 VI Conclusion
As a general rule, MAIF is subject to the same regulatory scheme as the private insurance industry except where the Insurance Article or another provision of law explicitly or implicitly provides otherwise. Under the Unfair Claim Settlement Practices Act, the Commissioner may order MAIF to discontinue an unfair practice, and to make restitution to a claimant based on a violation of the Insurance Article that relates to a failure by MAIF to abide by its contractual obligations in an insurance policy. Other remedies in the Act are not available against MAIFe.g., the Commissioner may not revoke or suspend MAIF's authority to sell insurance.
As a member of a special appeal board under the MAIF statute, the Commissioner participates in the review of MAIF decisions to cancel policies, but the Commissioner has no independent authority to review such decisions. Nor does the Commissioner ordinarily have authority to review a MAIF decision to void a policy abinitio on the ground that the insured misrepresented his or her eligibility for MAIF insurance. However, when MAIF rescinds a policy retroactively after a claim has been filed, the Commissioner has authority under the Unfair Claim Settlement Practices Act to review MAIF's finding of deliberate misrepresentation, unless MAIF has obtained court approval for the retroactive cancellation of the policy.
Finally, the Commissioner may impose administrative sanctions on MAIF or its producers for other violations of the State insurance law if, under the principles outlined in this opinion, the relevant provision of the Insurance Article explicitly or implicitly grants the Commissioner administrative authority over MAIF or its producers.
 J. Joseph Curran, Jr. Attorney General
 Kathleen Hoke Dachille Special Assistant to the Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] See, e.g., 62 Opinions of the Attorney General 578 (1977) (MAIF subject to Public Information Act); 61 Opinions ofthe Attorney General 567 (1976) (members of MAIF Board of Trustees are "public officials").
[2] It is also notable that the General Assembly has given the Commissioner discretion to exempt MAIF from certain administrative and procedural requirements generally applicable to State agencies. See Annotated Code of Maryland, State Government Article, § 10-120(b) (authorizing exemption from certain provisions relating to promulgation of regulations); § 10- 302(b) (authorizing exemption from provisions relating to declaratory rulings).
[3] The MAIF statute also creates the Industry Automobile Insurance Association, and defines it to include all automobile liability insurers, but then specifically excepts MAIF from the Association. See IN §§ 20-101(c); 20-402(a). The insurance code formerly used the term "insurer" within the provisions relating to the Association; the term "Association member" was substituted in 1996 to clarify the application of Association rules and to "avoid confusion with the defined term `insurer' that appears in [IN] § 1-101." Revisor's Note to IN § 20-101(c). Implicit in this change is an understanding that the term "insurer" ordinarily includes MAIF.
[4] Although there are no reported judicial decisions on whether MAIF is subject to regulation by the Commissioner, the courts appear to consider MAIF, in its capacity as an insurer, like other insurers. The Court of Appeals described an action against MAIF as "an action against a liability insurer based upon the insurer's allegedly erroneous denial of coverage." Mesmer v.MAIF, 353 Md. 241, 246, 725 A.2d 1053 (1996). Other than a passing mention of sovereign immunity, the analysis of this claim was no different than if a private insurer had been the defendant.
[5] The Act does not create a private right of action nor does it prevent any consumer from seeking redress in the courts based on conduct that is the subject of a complaint under the Act. IN § 27-301(b).
[6] Of the amendments to the Act since 1986, none has addressed MAIF directly or indirectly. See Chapter 5, § 1, Laws of Maryland 1993; Chapter 593, Laws of Maryland 1992; Chapter 21, § 3, Laws of Maryland 1991.
[7] MAIF is, and was at the time the Legislature enacted the Unfair Claim Settlement Practices Act, one of the larger automobile liability insurers in Maryland. MAIF currently insures approximately 3% of Maryland automobiles and accounts for approximately 5% of the automobile liability insurance written in the State. It ranks among the top ten automobile liability insurers in the State.
[8] For example, if necessary, the Commissioner may obtain from MAIF information concerning its settlement of claims by administrative subpoena under IN § 2-203, by request under the Public Information Act, Annotated Code of Maryland, State Government Article, § 10- 611 et seq, or by voluntary agreement.
[9] Section 27-305 provides:
 (a) The Commissioner may impose a penalty not exceeding $2,500 for each violation of § 27-303 of this subtitle or a regulation adopted under § 27-303 of this subtitle.
 (b) The penalty for a violation of § 27-304 of this subtitle is as provided in §§ 1-301, 4-113, 4-114, and 27-103 of this article.
 (c)(1) On finding a violation of this subtitle, the Commissioner may require an insurer or nonprofit health service plan to make restitution to each claimant who has suffered actual economic damage because of the violation.
 (2) Restitution may not exceed the amount of actual economic damage sustained, subject to the limits of any applicable policy.
[10] A willful violation of IN § 27-304 is also punishable as a criminal misdemeanor. IN §§ 1-301, 27-305(b). Of course, this remedy is outside the Commissioner's authority.
[11] In particular, the Commissioner must find that it appears:
(1) the insurer is:
 (i) conducting its business and affairs in a manner that threatens to make it insolvent or that is hazardous to its policyholders, creditors, or the general public; or
 (ii) engaged in an act, practice, or transaction that constitutes grounds making the insurer subject to conservation or liquidation proceedings; and
 (2) irreparable loss and injury to the property and business of the insurer or the general public has occurred or may occur unless the Commissioner acts immediately.
IN § 4-114(a).
[12] For purposes of this opinion we need not discuss whether MAIF is entitled to sovereign immunity with respect to independent civil causes of action. Therefore, we do not engage in the multi-faceted analysis of whether MAIF is a state agency entitled to sovereign immunity. See, e.g., A.S. Abell PublishingCo. v. Mezzanote, 297 Md. 26, 35, 464 A.2d 1068 (1983); CentralCollection Unit v. DLD Associates Ltd. Partnership, 112 Md. App. 502,685 A.2d 873 (1996).
[13] The Court of Appeals has not yet ruled on MAIF's assertion of sovereign immunity as to tort-based claims. SeeMesmer v. MAIF, 353 Md. 241, 725 A.2d 1053 (1996) (noting, but not deciding, question whether MAIF enjoys sovereign immunity with respect to tort claims for bad faith failure to settle a claim). However, it seems likely that many, if not most, complaints to the Commissioner seeking restitution from MAIF under the Unfair Claim Settlement Practices Act would be based, at least in part, on a theory that MAIF breached a contractual obligation.
[14] A waiver of sovereign immunity with respect to administrative fines might be inferred from IN § 11-323, which requires each insurer, including MAIF, to file data concerning the geographic distribution of its policies in the State and authorizes penalties if the insurer fails to make the required filing:
 Failure by the insurer or [MAIF] to submit the data required under this section on a timely basis is grounds for the imposition of the penalties provided in §§ 4-113
and 4-114 of this article.
IN § 11-323(d). The specific reference to MAIF in IN § 11-323(d) would be meaningless unless the monetary sanctions of IN § 4-113(d) are available against MAIF. As explained above, the other administrative sanctions set forth in IN §§ 4-113 and 4-114 cannot be applied against MAIF. See Parts II.B.2, 3 of this opinion. Thus, the only remaining penalties available against MAIF for a violation of IN § 11-323 are the monetary penalties set forth in IN § 4-113(d). Accordingly, one might infer that the Insurance Article permits the Commissioner to impose monetary penalties and to issue orders of restitution against MAIF when MAIF fails to comply with IN § 11-323.
On the other hand, the Commissioner's authority to fine MAIF under § 11-323 is not without ambiguity. Although IN § 11-323, since its enactment in 1995, has required MAIF to provide the information concerning the geographic distribution of its policies, MAIF was not specifically named in the penalty section of the statute as originally enacted. See Chapter 352, § 4, Laws of Maryland 1995, then codified as Article 48A, § 245. MAIF was only added to that subsection of IN § 11-323 when the subsection was redrafted "without substantive change" as part of the 1997 revision of the insurance code. The Revisor's Note explains that MAIF was explicitly added to the subsection "for consistency."See Chapter 35, Laws of Maryland 1997, Revisor's Note to IN § 11-323. There is no indication in the legislative history that the General Assembly explicitly or by necessary implication intended a waiver of sovereign immunity when it passed the 1995 legislation. Moreover, a change in a statute as part of code revision is not deemed to modify the law unless the Legislature's intention to do so is "unmistakable." Blevins v. BaltimoreCounty, 352 Md. 620, 642, 724 A.2d 22 (1999). Therefore, the 1997 code revision of IN § 11-323 presumably did not effect a waiver of sovereign immunity. In our opinion, the current language of IN § 11-323 cannot be read to authorize the Commissioner to impose a fine against MAIF under the Unfair Claim Settlement Practices Act, an unrelated statute enacted more than a decade earlier.
[15] Indeed, a producer may not represent himself or herself as an "agent" of MAIF. COMAR 14.07.02.01E.
[16] MAIF coverage is not available if the applicant leases the covered vehicle to a non-resident or garages it principally outside the State. IN § 20-502(c).
[17] See Part IV of this opinion.
[18] A license suspension is not a basis for rejection if the suspension resulted from a first offense under TR § 16-205.1.See IN § 20-516(a)(3)(i).
[19] This appeal process is not available if the policy was canceled for nonpayment of premiums. IN § 20-517(a).
[20] The terms "void" and "cancel" appear in the MAIF statute, but are not specifically defined. The term "rescind" is also used in the case law and commentary to refer to a retroactive cancellation of an insurance contract. The Court of Appeals has noted the use in Maryland case law of several terms, including "cancel," to refer to a retroactive termination of a policy. VanHorn v. Atlantic Mutual Insurance Company, 334 Md. 669, 686 n. 6,641 A.2d 195 (1994). The imprecise use of these terms has generated some confusion in the context of insurance contracts.See Williams, Insurance Law — Protecting the Public underMaryland's Compulsory Motor Vehicle Insurance Scheme: TheAbrogation of an Insurer's Common-Law Right to Void an InsuranceContract Ab Initio for a Material Misrepresentation in the PolicyApplication, 25 U. Balt. L.Rev. 289, 291-92 (1996). In this opinion, we use the terms "cancel retroactively" and "rescind" as synonyms for "void ab initio."
[21] Those provisions are now codified in IN § 20-509.
[22] The 1973 opinion also concluded that MAIF would be liable for any claims that arose in the interim between the time coverage was bound and the cancellation. 58 Opinions of theAttorney General at 432. However, a 1983 amendment, which used the term "void" in reference to a policy issued to an ineligible applicant, raised the possibility that such a cancellation operates retrospectively and that MAIF would not be liable for such claims regardless of the fault of the applicant. Janquitto,Maryland Motor Vehicle Insurance (2d ed.) at pp. 839-40. See Part IV.B. of this opinion.
[23] MAIF's early rules for binding coverage reflected the advice given in the 1973 opinion. See MAIF Rules 2.25, 2.26,published at 4:8 Md. Reg. 636 (April 13, 1977). Under those rules, MAIF reserved the right to disclaim liability as to any claims on a policy for which "the applicant is grossly negligent, or practices fraud with regard to eligibility." Rule 2.25. In any other case, if MAIF did not cancel within the 60-day period after coverage was bound, then "coverage shall not be affected by lack of eligibility." Rule 2.26.
[24] To accomplish this, the bill added language to then Article 48A, § 243B(c):
 A commission paid by the Fund shall be fully earned. A commission shall be deemed "fully earned" when a valid contract of insurance is made with the Fund, at issuance of an initial policy or endorsement thereof, as and when the correct and correctly rated premium is fully paid to the Fund, except when:
 (1) a prospective insured fails to qualify under subsection (a) of this section, in which event any policy issued shall be void ab initio, or
 (2) a prospective insured's initial payment to the Fund, or broker, agent, or premium finance company, is not honored, in which event any policy or endorsement issued in reliance on such payment shall be void ab initio.
During code revision the term "void" was substituted for "void abinitio" without the intention to make any substantive change. See
Chapter 11, Laws of Maryland 1996, Revisor's Note at pp. 556-57.
[25] The Task Force Report summarized this part of the bill as follows:
 MAIF agents to receive full earned commissions. At present time individual gets money back (including agent's commission) when he cancels in mid-term of policy and drives uninsured. Now will get back unearned premium less agent's commission. [sic] Net effect is to treat MAIF policyholder the same as policyholder with private carrier.
Task Force Report at p. 7. Several years later, the General Assembly reversed course on the payment of producers' commissions and amended the section to provide that "[t]he Fund may not pay any commission on a fully earned basis." Chapter 4, Laws of Maryland 1989. That legislation retained the proviso that producers would not earn a commission for policies issued to individuals who did not qualify for coverage. Again, the legislative file indicates that the purpose of the bill was to bring MAIF practices regarding payment of commissions in line with industry practice. See House Floor Report for House Bill 375 (1989).
[26] Material submitted to the General Assembly by MAIF in connection with this legislation indicated that MAIF "voided" approximately 20 policies per month based on the applicant's misrepresentation of Maryland residency. However, the materials did not indicate whether or not these cancellations were made within the 60-day review period. Letter of David C. Trageser, Executive Director of MAIF concerning Senate Bill 488 (February 18, 1998).
[27] The regulation was amended in 1999 to include assessment of an administrative fee that was authorized by 1998 legislation with respect to a policy voided because the applicant failed to satisfy the Maryland residency requirement. See COMAR14.07.02.02C(3); Chapter 400, Laws of Maryland 1998.
[28] The term "subsequently" in the regulation apparently refers to a time period after the producer makes the preliminary determination of eligibility, which is described in the immediately preceding portion of the regulation. See COMAR14.07.02.03B.
[29] The Van Horn decision noted a conflict among the states as to whether abrogation of the common law right of recission affects claims asserted by the insured for the insured's own injuries or damages. Some jurisdictions have found that rescission is not available even as to those claims; others have permitted rescission as to property damage (collision) claims, but not as to mandatory coverages such as PIP; still others have found rescission to be available as to all claims by the insured. SeeVan Horn, 334 Md. at 693 n. 8 (collecting cases for each position).
[30] The cancellation procedures for private insurers explicitly require that a cancellation notice advise the insured of the availability of MAIF insurance. See IN § 27-605(b)(3)(v).
[31] It is conceivable that a claim could be filed against a policy voided on eligibility grounds within the 60-day review period and that, based upon the retroactive cancellation of the policy, MAIF would deny the claim. In that case, the policy would be rescinded without need for a finding of deliberate misrepresentation. If the claimant filed a complaint with the Commissioner under the Unfair Claim Settlement Practices Act, the Commissioner's review would presumably be limited to confirmation that MAIF had followed its own procedures in denying the claim.
[32] If MAIF rescinds a policy after a claim is filed by an insured, the insured may invoke the statutory appeal process. However, it is notable that, if a third party not involved in the misrepresentation asserts a claim against a MAIF insured under a policy that MAIF declares void for intentional misrepresentation, the MAIF statute provides no remedy for that party.
 *Page 167